UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHESTER PHILBRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV-08-369-B-W |
| ) | |
| MAINE DEPARTMENT OF HEALTH ) | |
| AND HUMAN SERVICES, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION AND
APPOINTMENT OF COUNSEL**

Chester Philbrick failed to oppose a motion to dismiss his *pro se* Complaint against the state of Maine Department of Health and Human Services, but he now invites the Court to reconsider its dismissal. As there is no reason to disturb the Court's prior conclusion that it has no jurisdiction over the subject matter of his claim under the *Rooker-Feldman* doctrine, the Court declines the invitation.

**I.    STATEMENT OF FACTS[1]**

Mr. Philbrick has been twice convicted of sex offenses. In 1994, a jury convicted him of two counts of Gross Sexual Assault in violation of 17-A M.R.S.A. § 253. He was sentenced to a concurrent term of imprisonment of eight years on each count, all but three-and-a-half years suspended. *1994 Judgment and Commitment* (Docket # 6-7). Then, in 2007, Mr. Philbrick

---

[1] Because the Department's motion to dismiss was premised largely on the affirmative defense of res judicata, *see* Fed. R. Civ. P. 8(c)(1), the Court includes facts gleaned from the record of the state court proceedings, portions of which were attached to the Department's motion, that culminated in the termination of the Philbricks' parental rights.. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008) ("[W]here the motion to dismiss is premised on a defense of res judicata . . . the court may take into account the record in the original action."). Most of that record is under seal by Order of the Magistrate Judge pursuant to 22 M.R.S.A. § 4008, which requires confidential treatment of "records that contain personally identifying information and are created or obtained in connection with the Department's child protective activities." *See Order on Mot. to Seal* (Docket # 7), The Court makes detailed reference to only those documents not under seal.

pleaded guilty to one count of Unlawful Sexual Contact in violation of 17-A M.R.S.A. § 255-A. He was sentenced to a term of imprisonment of six years, all but nine months suspended. He was also required to register as a sex offender as a result of this conviction. *2007 Judgment and Commitment* (Docket # 6-8).

For several reasons, including his criminal record, the Department took preliminary custody of Mr. Philbrick's son in 2006 pursuant to an Order of Preliminary Child Protection, and in 2007, it petitioned to terminate his and his wife's parental rights. In early 2008, a Penobscot County District Court Judge issued a written order, granting the Department's petition and terminating parental rights. The Philbricks, represented by counsel, appealed to the Law Court. They were unsuccessful. On October 7, 2008, the Law Court determined that clear and convincing evidence supported the following findings:

> (1) both parents are unable to protect [the son] from jeopardy and the circumstances are unlikely to change within a time frame reasonably calculated to meet his needs; (2) both parents are unable to take responsibility for [the son] within a time frame reasonably calculated to meet his needs; and (3) termination of parental rights is in [the son's] best interests.

*Mem. of Decision* (Docket # 6-10).

Roughly three weeks later, Chester Philbrick filed with this Court a nine-paragraph *pro se* Complaint against the Department, alleging that the Department wrongfully removed his son from him in 2006 because he is a sex offender. *Compl.* ¶¶ 3-4 (Docket # 1). Mr. Philbrick claimed that he raised his son from 1999 to 2006 "with no problem," *id.* ¶ 5, and that he and his wife are capable of caring for him in the future, notwithstanding the Department's concern that his son requires special services and was unsafe in Mr. Philbrick's care. *Id.* ¶ 9. Mr. Philbrick stated that his sister is mentally retarded and he claimed that he took her baby from her when the

baby was three weeks to a month old. He alleged his sister called the Department to get revenge in an effort to have the Department take his son away from him. *Id.* ¶¶ 7-8.

Noting that Mr. Philbrick's parental rights were lawfully terminated by order of a state court on March 7, 2008, the Department moved pursuant to Rule 12(b)(6) to dismiss the Complaint on January 29, 2009. *Def.'s Mot. to Dismiss* (Docket # 6). The Department argued that the Complaint should be dismissed because (1) it did not purport to seek any relief, (2) the Department is immune from suit, and (3) to the extent Mr. Philbrick sought to re-litigate issues decided against him in the state court proceedings that culminated in the termination of his parental rights, the Court lacked jurisdiction and his claim was barred by res judicata. *Id.* at 4-7.

Mr. Philbrick failed to object to the Department's dispositive motion, and on February 24, 2009, the Court granted it without a hearing, dismissing Mr. Philbrick's Complaint without prejudice two days later. *Order* (Docket # 10); *Judgment of Dismissal* (Docket # 12). On March 3, 2009, Mr. Philbrick filed a two-sentence motion in which he contends that he did not receive notice to appear for a hearing on February 26, the day Judgment issued, and requests a hearing on the Department's dispositive motion. *Pl.'s Mot. for Reconsideration and Appointment of Counsel* (Docket # 13). Mr. Philbrick also requests that the Court appoint counsel to represent him. *Id.* The Department opposes Mr. Philbrick's motion on several grounds. *Def.'s Opp'n to Pl.'s Mot. for Reconsideration and to Appoint Counsel* (Docket # 14).

II.  **DISCUSSION**

The Court interprets Mr. Philbrick's motion as one pursuant to Rule 59(e) for reconsideration of the Judgment of dismissal, based on a claimed lack of notice of a hearing on the Department's motion to dismiss. *See* Fed. R. Civ. P. 59(e). The Court may grant a Rule 59(e) motion for reconsideration "only where the movant shows a manifest error of law or newly

discovered evidence." *Kansky v. Coca-Cola Bottling Co.*, 492 F.3d 54, 60 (1st Cir. 2007). As an initial matter, because Mr. Philbrick was not entitled to a hearing on the Department's motion, the Court did not err by entering Judgment of dismissal without scheduling one *sua sponte* and notifying him accordingly. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001) (observing that "motions to dismiss generally do not necessitate evidentiary hearings" (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989))).

Mr. Philbrick's motion can also be read to imply that the Court erred by granting the Department's motion to dismiss without opposition.[2] Even though Local Rule 7(b) deems Mr. Philbrick's failure to oppose the motion a waiver of any objection, D. Me. Loc. R. 7(b),[3] the First Circuit has instructed that "'the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim.'" *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) (quoting *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003)); *cf. McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction." (citing Fed. R. Civ. P. 12(h)(3))). Mindful of these twin obligations, the Court assessed the merits of Mr. Philbrick's Complaint and the Department's motion, and its own jurisdiction before entering Judgment.

The Court construed Mr. Philbrick's Complaint as arising under 42 U.S.C. § 1983,[4] and understood his claim to be that because Mr. Philbrick is able to care for his son and attend to his

---

[2] Mr. Philbrick nowhere contends that he did not receive notice of the Department's motion to dismiss—only that he did not receive notice of a hearing. The Court assumes he did receive the Department's motion to dismiss. However, given the Court's ultimate jurisdictional conclusion, the analysis would be the same if he had not.

[3] *Pro se* litigants are not excused from complying with the Federal Rules of Civil Procedure or the Local Rules of this district. *FDIC v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994).

[4] Section 1983 provides, in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of

4

needs "with no problem," *Compl.* ¶ 9, the Department deprived him of a right protected by the Constitution and laws when it took his son away from him and prevailed in its efforts to terminate his parental rights. *See Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990) (instructing that *pro se* pleadings should be "liberally construed, in favor of the *pro se* party").

Courts have recognized that § 1983 claims arising from state court proceedings involving adjudication of parental rights fall into two categories. In the first category are claims of injury caused by a state court's adjudication of parental rights. *See, e.g.*, *Warnick v. Briggs*, No. 2:04CV360DAK, 2007 U.S. Dist. LEXIS 80970 (D. Utah Oct. 30, 2007); *McLean v. City of New York*, No. 04 Civ. 8353 (SAS), 2007 U.S. Dist. LEXIS 8667 (S.D.N.Y. Feb. 6, 2007). In the second category are claims of injury caused by state actors who, in the course of a state court's adjudication of parental rights, allegedly violate a parent's constitutional rights. *See, e.g.*, *Brokaw v. Weaver*, 305 F.3d 660, 665 (7th Cir. 2002) (state actors accused of conspiring to initiate false child neglect proceedings).

These categories have important implications for the Court's subject matter jurisdiction under the *Rooker-Feldman* doctrine.

> The *Rooker-Feldman* doctrine largely bars the federal district court from reviewing state court judgments. *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

---

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

*Marcello v. Maine*, No. CV-06-68-B-W, 2007 U.S. Dist. LEXIS 49756, at *3-4 (D. Me. July 9, 2007). The First Circuit has instructed that the doctrine "forecloses district court jurisdiction of claims that are 'inextricably intertwined' with the claims adjudicated in a state court." *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999) (quoting *Feldman*, 460 U.S. at 483 n.16); *see Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 n.1 (1st Cir. 2003) (reiterating that *Rooker-Feldman* "implicates the court's subject matter jurisdiction"). "A federal claim is inextricably intertwined with the state-court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Sheehan v. Marr*, 207 F.3d 35, 40 (1st Cir. 2000) (internal quotation omitted).

Courts have recognized that the doctrine deprives federal district courts of subject matter jurisdiction over claims of injury caused by a state court's adjudication of parental rights (i.e., claims falling in the first category described above). For example, in *McLean*, the plaintiffs pursued a § 1983 claim against state officials who had taken custody of their children pursuant to a Family Court finding of abuse and neglect. 2007 U.S. Dist. LEXIS 8667, at *2-4. Concluding that the *Rooker-Feldman* doctrine prevented it from hearing their claim for money damages, the district court stated that "plaintiffs are in effect asking this Court to reject the Family Court's findings and reverse its judgment ordering the children's removal from plaintiffs' custody." *Id.* at *16.

When the Court dismissed Mr. Philbrick's Complaint, it was satisfied that his claim suffered the same malady and was outside the Court's subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. There is no allegation that the state court proceedings were constitutionally flawed in any way, or that the Department or its agents acted improperly.[5] Mr.

---

[5] Mr. Philbrick's allegation that his sister reported him to the Department in an act of revenge, even if true, may implicate his sister, but not the Department. Mr. Philbrick makes no allegation that the Department somehow

Philbrick's frustration with the result of the proceedings terminating his parental rights is readily apparent, and he believes that his continued custody of his son is in his son's best interest, a central issue he had a fair opportunity to litigate before the state trial and appellate courts.[6] Mr. Philbrick's § 1983 claim is thus "inextricably intertwined" with the claim adjudicated in state court—he may prevail only to the extent that the state court wrongly decided the issues before it. *See Rosenfeld v. Egy*, 346 F.3d 11, 19 (1st Cir. 2003) (cautioning that § 1983 "is not to be used as a vehicle for avoiding application of the *Rooker-Feldman* doctrine") (citing *Wilson v. Shumway*, 264 F.3d 120, 126 (1st Cir. 2001)). Based on a determination that *Rooker-Feldman* applied, the Court dismissed Mr. Philbrick's Complaint pursuant to Rules 12(b)(1) and 12(h)(3).[7] *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Mr. Philbrick has advanced no reason to revisit this determination, and his motion for reconsideration and appointment of counsel must fail.

## III. CONCLUSION

The Court is convinced it committed no error of law in dismissing Mr. Philbrick's Complaint, and DENIES his Motion for Reconsideration and Appointment of Counsel (Docket # 13).

---

improperly acted as his sister's agent in bringing the termination petition against him, or that it would have any reason to do so.

[6] By statute, parental rights may not be terminated in a contested case unless a court finds, based on clear and convincing evidence, that termination is in the best interest of the child. 22 M.R.S.A. § 4055(1)(B)(2)(a).

[7] The Department's motion to dismiss was a hybrid. It included an argument for dismissal based on lack of jurisdiction, properly raised under Rule 12(b)(1), and arguments for dismissal based on a failure to state a claim and the affirmative defense of res judicata, both properly raised under Rule 12(b)(6). *See Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006). Even though the Department failed to invoke explicitly Rule 12(b)(1), from the Court's perspective, this omission was insignificant. Alert to the admonition that it consider the jurisdictional basis for dismissal before the others, the Court granted the Department's motion and dismissed the Complaint for lack of subject matter jurisdiction. *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002) ("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter.").

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2009